William BENOIT, Petitioner,

v.

Barbara BOCK, Respondent.

No. 00–10191–BC.

United States District Court,
E.D. Michigan,
Northern Division.

Jan. 9, 2003.

William Benoit, Lapeer, MI, pro se.

Debra M. Gagliardi, Vincent J. Leone, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for Barbara Bock.

## OPINION AND ORDER CONDITIONALLY GRANTING PETITION FOR WRIT OF HABEAS CORPUS

LAWSON, District Judge.

Before the Court is the *pro se* petition of William Benoit, presently an inmate at the Thumb Correctional Facility in Lapeer, Michigan, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner alleges that his appellate counsel was ineffective when he permitted the petitioner's appeal of right to be involuntarily dismissed, apparently because of the petitioner's inability to pay for counsel's services on appeal. The Court agrees that the petitioner was denied his Sixth Amendment right to counsel on appeal, and that the failure of the Michigan state courts to grant the petitioner relief was contrary to clearly established federal law as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(1). Accordingly, the Court will conditionally grant the petition for a writ of habeas corpus, and direct the respondent to release the petitioner from his unlawful custody unless the Michigan Court of Appeals reinstates the petitioner's appeal of right.

### I.

On July 17, 1996, a circuit court jury in Hillsdale County, Michigan found the petitioner guilty of two counts of second-degree murder, Mich. Comp. Laws § 750.317, and two counts of possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b (felony firearm). The trial court sentenced the petitioner to concurrent terms of twenty-five to fifty years in prison for the murder convictions and consecutive terms of two years in prison for the felony firearm convictions.

On September 17, 1996, the petitioner filed a claim of appeal through retained counsel. On February 19, 1997, the Michigan Court of Appeals notified the petitioner's attorney that he had failed to perfect the appeal by not taking steps to ensure the timely filing of the transcript. The court of appeals warned counsel that the case was in jeopardy of involuntary dismissal or other action unless the appeal was perfected within twenty-one days.

Appellate counsel subsequently moved to withdraw as counsel on the ground that the petitioner had not abided by the terms of the retainer agreement. According to appellate counsel, the petitioner had neither paid his fees nor provided funds for the transcripts needed to perfect the appeal. The Michigan Court of Appeals notified appellate counsel of defects in his motion to withdraw, and on May 1, 1997 struck the motion for failure to conform to Michigan Court Rule 7.211. On May 19, 1997, the court of appeals dismissed the appeal "for want of prosecution" because the petitioner "failed to ensure the timely filing of the transcript." *People v. Benoit*, No. 197942 (Mich.Ct.App. May 19, 1997).

On July 14, 1997, Terrence R. Flanagan, the Deputy Administrator of the Michigan Assigned Counsel System, wrote the Clerk of the Michigan Court of Appeals seeking to have the petitioner's appeal of right reinstated, but was informed by letter that the Court of Appeals had no jurisdiction to consider the request because more than twenty-one days had passed since the involuntary dismissal was filed. On July 29, 1997, the State Appellate Defender Office ("SADO") was appointed by the trial court to represent the petitioner. The SADO attorney filed a motion for new trial, which the trial court denied. SADO then filed an application for delayed leave to appeal,

alleging that: (1) the petitioner was denied the effective assistance of counsel during the appeal of right because his attorney allowed his appeal to be dismissed for nonpayment of fees; (2) the petitioner's second-degree murder conviction was against the great weight of the evidence; (3) the petitioner was deprived of a fair trial because the jurors were exposed to extraneous information; and (4) the prosecutor improperly vouched for the petitioner's guilt by introducing the co-defendant's guilty plea. The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *People v. Benoit*, No. 211570 (Mich.Ct.App. Nov. 5, 1998).

The petitioner applied for leave to appeal in the Michigan Supreme Court, alleging that: (1) the murder conviction was against the great weight of the evidence; (2) the jurors were exposed to extraneous information; and (3) the prosecutor improperly introduced a co-defendant's guilty plea. The supreme court denied review. *See People v. Benoit*, No. 113500 (Mich. Sup.Ct. July 8, 1999).

On May 31, 2000, the petitioner filed his habeas corpus petition, which asserts one ground for relief:

> MR. BENOIT'S CLAIM OF APPEAL SHOULD BE REINSTATED BECAUSE HE WAS DENIED EFFECTIVE ASSISTANCE OF ORIGINAL RETAINED APPELLATE COUNSEL WHERE THAT ATTORNEY ALLOWED HIS APPEAL TO BE DISMISSED SIMPLY BECAUSE HE WAS NOT PAID.

The respondent argues in an answer to the petition filed through counsel that the petitioner's claim lacks merit because defense counsel's actions did not deprive the petitioner of appellate review of his claims. In her answer, the respondent also asserts, inexplicably and incorrectly, that "Benoit was afforded an adequate opportunity to present his claims fairly in the context of the State's appellate process through a subsequent appeal granted by leave of Court." Ans. to Pet. at 5. This Court has no record of an appeal on the merits being entertained by the state courts. Leave to file a delayed appeal was denied, according to the orders in the record before this Court, and there has never been any reasoned decision issued by a Michigan appellate court on any of the petitioner's appellate issues, including his claim of ineffective assistance of appellate counsel.

## II.

A threshold question is whether the petitioner has exhausted his state remedies prior to filing his habeas corpus petition. Although the respondent has not raised failure to exhaust state remedies as a defense, the defense is not waived "unless the State, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3); *Rockwell v. Yukins*, 217 F.3d 421, 423–24 (6th Cir.2000). Moreover, considerations of comity and federalism require the Court "to review the exhaustion issue *sua sponte.*" *Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir.1987) (citing *Parker v. Rose*, 728 F.2d 392, 394 (6th Cir. 1984)).

■ The doctrine of exhaustion of state remedies requires state prisoners to fairly present their claims to the state courts before raising those claims in a federal habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1)(A) and (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir.2000). The exhaustion requirement is satisfied if a prisoner invokes one complete round of the State's established appellate review process, including a petition for discretionary review to a state supreme court. *O'Sulli-*

*van,* 526 U.S. at 839–40, 845, 119 S.Ct. 1728. This means that state prisoners in Michigan must raise their habeas claims in the Michigan Court of Appeals and in the Michigan Supreme Court. *Mohn v. Bock,* 208 F.Supp.2d 796, 800 (E.D.Mich.2002).

The petitioner raised his habeas claim in the Michigan Court of Appeals, but not in the Michigan Supreme Court. Although ineffective assistance of counsel can excuse these procedural errors, the ineffective assistance of counsel claim itself must still, in turn, have been presented to the state courts. *See Edwards v. Carpenter,* 529 U.S. 446, 452, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000).

■ The failure to exhaust is an obstacle to reviewing the merits of a claim, however, only when the state still provides a remedy to exhaust. *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir.1994). The petitioner in this case no longer has an effective state remedy; he cannot present his claim in the Michigan Supreme Court because the fifty-six day deadline for appealing the court of appeals decision has expired. *See* M.C.R. 7.302(C)(3). The petitioner could begin the appellate process anew by filing a motion for relief from judgment. *See* Mich. Ct. R. 6.502. However, the Michigan Court of Appeals has already ruled perfunctorily that the petitioner's claim lacks merit, and he is not asserting a retroactive change in the law. Thus, the petitioner is barred from pursuing an otherwise available state court remedy, Mich. Ct. R. 6.508(D)(2), and his claim must be deemed exhausted. *Gray v. Netherland,* 518 U.S. 152, 161, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996).

■ The evaporation of state procedural remedies caused by the passage of time will not completely excuse a prisoner's failure to avail himself of them, however. Generally speaking, federal courts may review a prisoner's procedurally defaulted claims on the merits only if he shows cause for not raising his claims at all levels of state court review and prejudice, or that he is actually innocent of the crimes for which he was convicted. *Hannah v. Conley,* 49 F.3d 1193, 1195–96 & 1196 n. 3 (6th Cir.1995) (citing *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), and *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). *See also Mohn v. Bock,* 208 F.Supp.2d 796, 801 (E.D.Mich. 2002).

■ Here, however, the Court need not enforce the procedural default because the respondent had not raised it in her answer to the habeas petition. With the previously-discussed exception of exhaustion of state remedies, the Sixth Circuit strongly discourages the *sua sponte* invocation of procedural affirmative defenses that were not raised by the respondent. *See Scott v. Collins,* 286 F.3d 923, 928–29 (6th Cir. 2002). Although the affirmative defense of exhaustion must be expressly waived, *see* 28 U.S.C. § 2254(b)(3), the same is not true for the affirmative defense of procedural default. Therefore, the failure to raise the issue of procedural default can properly be considered an implicit waiver of that affirmative defense to the petition. *See Dickens v. Jones,* 203 F.Supp.2d 354, 361 (E.D.Mich.2002) (collecting cases); *see generally Trest v. Cain,* 522 U.S. 87, 89–90, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997) (affirming that courts of appeal are not required to raise the defense of procedural default *sua sponte,* and recognizing that failure to raise the defense normally constitutes a waiver). Although it may seem incongruous to permit waiver of the defense of procedural default when Congress has expressly dictated otherwise for the closely related defense of failure to exhaust state remedies, it is important to recall that the two defenses address different aspects of federal-state comity.

Whereas exhaustion concerns the existing ability of the State, through its own procedural framework, to remedy the alleged injustice free of federal interference, procedural default typically arises when the State in question is no longer able to offer a remedy through its normal procedures. It is entirely understandable why states would prefer to address problems which may undermine the validity of their convictions in the first instance when that is still possible, but be more amenable to federal intervention when the petitioner has no other outlet for relief. *See, e.g., Esslinger v. Davis,* 44 F.3d 1515, 1527–28 (11th Cir. 1995) (recognizing that the state is in the best position to determine if its procedural rules must be vindicated, and holding that the Court should assume that the state's omission of the defense of procedural default in its answer was justified). That distinction is particularly underscored in this case, where it cannot be doubted, as will be explained below, that the petitioner received constitutionally ineffective assistance of counsel on direct appeal, but that the Michigan Court of Appeals was at least initially powerless to do anything about it.

Accordingly, the Court finds that the petitioner's procedural default does not bar consideration of the merits in this case.

### III.

The petitioner's claim is reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (AEDPA). This Act altered the standard of review federal courts must apply when reviewing applications for a writ of habeas corpus. The AEDPA applies to all habeas petitions filed after the effective date of the Act, April 24, 1996. *Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Because the petitioner's application was filed after that date, the provisions of the AEDPA, including the amended standard of review, apply to this case.

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429, 433 (6th Cir. 1998). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also Cremeans v. Chapleau,* 62 F.3d 167, 169 (6th Cir.1995) ("We give complete deference to state court findings unless they are clearly erroneous.").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409, 120 S.Ct. 1495. The Court defined "unreasonable application" as follows:

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .

[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410–11, 120 S.Ct. 1495. *See also Lewis v. Wilkinson,* 307 F.3d 413, 418 (6th Cir.2002).

The petitioner's only claim is that his appellate counsel was ineffective for failing to prosecute his appeal, or at least for failing to re-file his stricken motion to withdraw and ensure that the petitioner was appointed another attorney. In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-pronged test for determining whether a petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. 2052. Second, a petitioner must show that counsel's deficient performance prejudiced the petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

The Supreme Court emphasized that, when assessing counsel's performance, the reviewing court should afford counsel a great deal of deference:

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the chal-

lenged action might be considered sound trial strategy.

*Id.* at 689, 104 S.Ct. 2052 (internal quotes and citations omitted). The Court explained that to establish deficient performance, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. 2052.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. The Sixth Circuit, applying the *Strickland* standard, has held that a reviewing court therefore must focus on whether counsel's alleged errors "have undermined the reliability of and confidence in the result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311 (6th Cir.1996).

■■■ *Strickland,* however, assumes that there is actually some performance of counsel capable of evaluation. When counsel has failed to provide any assistance at all, however, prejudice can sometimes be presumed. Thus, denial of counsel at a critical stage of a trial mandates automatic reversal, even if the evidence against the defendant was overwhelming. *See United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) ("[I]f counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable."); *Rickman v. Bell,* 131 F.3d 1150, 1156–57 (6th Cir.1997). *See also Bell v. Cone,* 535 U.S. 685, 122 S.Ct. 1843, 1851, 152 L.Ed.2d 914 (2002). Similarly, when counsel has failed diligently to pursue his client's appeal of right from a criminal conviction contrary to his client's request,

the Court need not attempt to determine whether his conviction might have been upheld. *See Rodriquez v. United States,* 395 U.S. 327, 330, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969); *Peguero v. United States,* 526 U.S. 23, 28–29, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999) (distinguishing trial judge's failure to inform a defendant of his right to appeal from *Rodriguez,* where counsel's failed to file a requested appeal); *see also Roe v. Flores–Ortega,* 528 U.S. 470, 483, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) (reaffirming that no prejudice need be shown when defense counsel fails to file a requested appeal).

■■ Here, there can be no question that under clearly established federal law, the petitioner's counsel was ineffective in failing to carry through with his appeal. *See Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). In *Evitts,* defense counsel filed a timely notice of appeal to the Court of Appeals of Kentucky, but failed to file the court record and a required "statement of appeal" containing various facts about the nature of the case. The Commonwealth responded by filing a motion to dismiss for failure to file the required statement of appeal, and the court granted the motion. Defense counsel's request for reconsideration was denied, as were his appeal to the Kentucky Supreme Court and his motion in the trial court to vacate the judgment or grant a belated appeal. On writ of certiorari to the United States Court of Appeals for the Sixth Circuit, the Supreme Court affirmed the determination of the federal district and appellate courts that the petitioner's right to effective assistance of counsel on appeal had been violated. The right to counsel is also the right to "effective assistance" of counsel, and by failing to adhere to the procedural requirements for prosecuting the petitioner's appeal of right,

counsel was constitutionally ineffective. *Id.* at 396–97, 105 S.Ct. 830.

The conduct of the petitioner's appellate counsel in this case was no less ineffective. As the Seventh Circuit has explained:

> There is no meaningful distinction between a lawyer who fails to file any appeal at all, and one who files the appeal but then takes no action to prosecute that appeal, ignores court orders, and ultimately advises his client to dismiss the appeal and instead to file a non-existent motion. *See Fern v. Gramley,* 99 F.3d 255, 259 (7th Cir.1996). Either way, the defendant has been denied the opportunity to have a lawyer represent him on direct appeal.

*Griffin v. United States,* 109 F.3d 1217, 1220 (7th Cir.1997). In this case, having filed the notice of appeal, counsel proceeded not to diligently prosecute the appeal by refusing to file the lower-court transcripts and an appellate brief, apparently because the petitioner refused to pay him for his services. Attorneys have a right to expect compensation for their services; however, they may not hold a client's constitutional rights hostage to compel payment. *See United States v. Wright,* 845 F.Supp. 1041, 1072 n. 35 (D.N.J.) ("[L]awyers are required to provide zealous advocacy regardless of a criminal defendant's failure to pay legal fees."), *aff'd,* 46 F.3d 1120 (3d Cir.1994). An attorney who files a notice of appeal must diligently prosecute that appeal until written authorization to withdraw is sought and received from the appellate court. *Abels v. Kaiser,* 913 F.2d 821, 823 (10th Cir.1990). Although the petitioner's attorney attempted to seek leave to withdraw from the case, he ignored the court of appeals' order striking his motion as improperly filed, thus resulting in the dismissal of his client's appeal. Such behavior is not only an egregious violation of Michigan Rule of Professional Conduct 1.3, but also plainly denied the petitioner effective assistance of counsel on his appeal of right.

The Michigan state appellate courts did not issue a reasoned decision on this issue. However, the court of appeals' form-order denial of the application for a late appeal "for lack of merit in the grounds presented" in contrary to the holdings in *Strickland, Cronic,* and *Evitts.*

The respondent contends that even if the Court finds defense counsel to have been ineffective on appeal, there is no basis for relief because any prejudice was cured by the subsequent pursuit of the petitioner's appeal rights by the State Appellate Defenders Office (SADO). The Court disagrees. What the petitioner eventually received was not his appeal of right—the reopening of which apparently was barred by the passage of time after the involuntary dismissal—but rather a truncated opportunity to request a new trial in the trial court, and the denial of leave to have an appellate court review that request. Although SADO did, in its appeal from the order denying a new trial, include a claim that counsel's first attorney had been ineffective, the court of appeals summarily denied leave to file a delayed appeal on the basis that the petitioner had not shown an entitlement to it, something that could not have occurred on the appeal of right. *See People v. Boulding,* 423 Mich. 854, 854, 376 N.W.2d 114, 114 (1985) (holding that final judgment affected the rights of the parties, and that right to appeal was therefore a matter of right, not grace); Mich. Ct. R. 7.203(A)(1) (providing for appeal of right from "final judgment" of a circuit court); Mich. Ct. R. 7.207(7)(b)(ii) (establishing as final judgment the imposition of sentence after conviction). It may well be that the petitioner would have failed on his appeal of right, although at least one of his issues—the use of a co-defendant's guilty plea to prove the

petitioner's guilt—deserves a meaningful adversarial testing on the merits; however, because the petitioner's attorney abandoned him on appeal, this Court may not so assume a lack of prejudice.

### IV.

The petitioner's constitutional right to the assistance of counsel on his direct appeal was violated when his attorney abandoned the petitioner's appeal of right after counsel's motion to withdraw was stricken for failure to comply with the applicable Michigan Court Rules. Although, due in substantial part to counsel's ineffectiveness, no Michigan state court offered a reasoned judgment on the merits of this claim, the Court concludes that the state court of appeals' denial of relief is manifestly contrary to the Supreme Court's holding in *Evitts v. Lucey. See Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir.2000) (holding that in the absence of a reasoned state-court decision, federal courts nevertheless conducts a deferential review of the possible rationales for the result). Because the petitioner is therefore is in custody in violation of the Constitution of the United States, the Court will conditionally grant the petition for writ of habeas corpus, directing the respondent to release the petitioner unless the Michigan Court of Appeals reinstates the petitioner's appeal of right and appoints counsel within sixty days.

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus is **GRANTED.**

It is further **ORDERED** that the Michigan Court of Appeals shall, within sixty days, reinstate the petitioner's appeal and undertake the appointment of counsel to represent the petitioner in his pursuit of that appeal.

It is further **ORDERED** that if the petitioner's appeal is not reinstated within sixty days to the active docket of the Michigan Court of Appeals, the Michigan Department of Corrections shall release him from its custody.