**David Michael KORAS, Petitioner,**

v.

**Kenny ROBINSON, Respondent.**

No. 00–71178.

United States District Court,
E.D. Michigan,
Southern Division.

May 6, 2003.

Craig A. Daly, Detroit, MI, for David Koras.

Jeffrey W. Caminsky, Wayne County Prosecutor's Office, Detroit, MI, Laura G. Moody, Mich. Dept. of Atty. Gen., Habeas Corpus Div., Lansing, MI, for Kenny Robinson.

## OPINION AND ORDER CONDITIONALLY GRANTING PETITION FOR WRIT OF HABEAS CORPUS [1]

TARNOW, District Judge.

### I. *Introduction*

This matter is before the Court on Petitioner David Michael Koras's petition for a writ of habeas corpus. The magistrate judge issued a report and recommendation recommending that the petition be denied. Because the Court concludes that Petitioner was deprived of the effective assistance of trial and appellate counsel, the Court rejects the report and recommendation and conditionally grants a writ of habeas corpus.

### II. *Facts*

Petitioner's conviction arises out of the stabbing death of Dwayne Tindell on February 16, 1994, in Inkster, Michigan.

Paul Craig Harris testified that, at approximately 9:30 a.m. on that date, he was walking to a barber shop when he saw a car parked in the parking lot of a barbecue restaurant. He observed two men inside the car. At some point, the car was started. Mr. Harris then saw the passenger punch the driver in the face three or four times. Mr. Harris testified that the driver was attempting to steer the car with one hand, while trying to ward off the punches with the other. Mr. Harris testified that he saw the car being driven out of the parking lot and saw it head toward the barber shop. Mr. Harris then heard a loud crash. He walked toward the barbershop and observed that the car had been driven through the front of the barbershop. Mr. Harris saw a man he identified as Petitioner get out of the passenger side of the car. Mr. Harris testified that Petitioner stated, "someone needs to tend to him," referring to the car's driver. Petitioner began walking away slowly, and then began to jog. Mr. Harris and one of the barbers ran after Petitioner. When they caught up to him, he stopped, showed them a cut on his left wrist, and said that he had cut his own wrist and that he was tired of living. Police arrived shortly thereafter and arrested Petitioner.

David Latham and Jimmie Clark, employees at the barbershop, corroborated Mr. Harris's testimony that Petitioner requested help for the driver before leaving the scene.

The driver of the vehicle was identified as Dwayne Tindell. The parties stipulated to admission of the medical examiner's report finding that Mr. Tindell died of a stab wound to the chest which punctured the aorta.

City of Inkster Police Officer Darryl Tubbs testified that he took statements

1. Staff Attorney Mary Beth Collery provided quality research assistance.

from Petitioner on February 16 and 17, 1994. Officer Tubbs testified that, in the February 16 statement, Petitioner started telling Officer Tubbs how Petitioner and Mr. Tindell came to be in the vehicle together in Inkster. However, before completing his statement, Petitioner told Officer Tubbs that he was tired and needed to get some rest. Officer Tubbs terminated the interrogation. He questioned Petitioner again the next day. Officer Tubbs testified that in his statement on February 17, Petitioner stated that he and Mr. Tindell were in Mr. Tindell's car in a restaurant parking lot on the morning of February 16. Petitioner stated that they stopped in the parking lot so that he could smoke crack, which, earlier in the morning, Mr. Tindell had driven Petitioner to purchase. Petitioner stated that he and Mr. Tindell began arguing because Petitioner wanted Mr. Tindell to drive him back to the crack house and Mr. Tindell refused. The argument became more heated and Petitioner pulled out a knife. He stated that he did not intend to stab Mr. Tindell, he just took the knife out and was waving it around and yelling at Mr. Tindell to take him back to the crack house.

Petitioner did not testify in his defense.

### III. *Procedural History*

Following a bench trial in Recorder's Court for the City of Detroit, Petitioner was convicted of second-degree murder. On March 25, 1995, he was sentenced to twenty to fifty years imprisonment.

Petitioner, through his appointed appellate attorney, Mercedes Mueckenheim, filed an appeal of right, raising the following claims:

 I. The trial court created reversible error when it denied defendant's motion to suppress his statements to police on the grounds that they were involuntary, or coerced and that defendant was not competent to voluntarily waive his *Miranda* rights.

 II. The sentencing judge violated the principle of proportionality when she sentenced defendant to 25 to 50 years in prison on the second degree murder conviction.

The Michigan Court of Appeals affirmed Petitioner's conviction and sentence. *People v. Koras*, No. 185209 (Mich.Ct.App. Feb. 27, 1997).

Petitioner then filed a *pro se* application for leave to appeal in the Michigan Supreme Court, presenting the same claims presented to the Michigan Court of Appeals and the following additional claim:

 III. Defendant's 6th Amendment right to counsel was violated, and any statement given to the police should be suppressed due to the fact that defendant communicated a request for an attorney to be present on February 16, 1994. This request was not honored, rendering any subsequent statements inadmissible as evidence.

The Michigan Supreme Court denied leave to appeal. *People v. Koras*, 456 Mich. 917, 573 N.W.2d 617 (Mich.1997).

Petitioner then filed a motion for relief from judgment in the trial court, raising the following claims:

 I. Was defendant Koras denied his right to due process when his statement to the police was introduced at trial in violation of his Sixth Amendment right to counsel?

 II. Was defendant Koras deprived of his liberty without due process of law, under both the United States and Michigan Constitutions, by the failure of the trial court to articulate on the record at the time of sentencing any reasons for imposition of the sentences?

III. Is resentencing required because the court failed to respond to the defendant's challenge to the presentence report regarding the facts of the incident and his prior drug use?

IV. Was defendant Koras denied his right of due process to be sentenced on accurate information when the trial judge erroneously scored the sentencing guidelines?

V. Was defendant Koras deprived off his right to the effective assistance of counsel guaranteed by the United States and Michigan Constitutions, by the deficient performance of trial counsel that denied him of a fair trial?

VI. Was defendant Koras denied due process when the court failed to consider the requested lesser offense of involuntary manslaughter, which was supported by the evidence?

VII. Has defendant Koras established good cause for failure to raise the present claims on direct appeal due to the ineffective assistance of appellate counsel and actual prejudice in that his guilty plea was involuntary [sic] and his sentence invalid?

The trial court denied the motion. *People v. Koras,* No. 94–5006–01 (Third Judicial Circuit Court March 9, 1999). Petitioner filed delayed applications for leave to appeal the trial court's denial of his motion for relief from judgment in the Michigan Court of Appeals and Michigan Supreme Court, both of which denied leave to appeal. *People v. Koras,* No. 219252 (Mich.Ct.App. Aug. 3, 1999); *People v. Koras,* 461 Mich. 968, 609 N.W.2d 189 (Mich. 2000).

On March 3, 2000, Petitioner, through his attorney Craig Daly, filed the pending petition for a writ of habeas corpus, presenting the following claims:

I. Petitioner Koras was denied his right to due process when his statement to the police was introduced at trial in violation of his request for counsel during custodial interrogation.

II. Petitioner Koras was deprived of his liberty without due process of law at his sentencing when the trial court (A) sentenced Petitioner on inaccurate information regarding the guideline scores; (B) failed to respond to Petitioner's challenge to inaccurate information in the presentence report; and (C) failed to articulate on the record reasons for the imposition of the sentence.

III. Petitioner Koras was denied due process when the court failed to consider the requested lesser offense of involuntary manslaughter, which was supported by the evidence.

IV. Petitioner Koras was deprived of his right to the effective assistance of counsel guaranteed by the United States Constitution, by the deficient performance of trial counsel that denied him a fair trial.

V. Petitioner Koras did not procedurally default his claims because he has established good cause for failure to raise the present claims on direct appeal due to the ineffective assistance of appellate counsel and actual prejudice.

The Court referred the petition to Magistrate Judge Donald A. Scheer for a Report and Recommendation. Magistrate Judge Scheer issued a Report and Recommendation recommending that the petition be denied. Petitioner filed timely objections to the Report and Recommendation.

This Court conducted an evidentiary hearing on March 21, 2003. The parties have filed supplemental briefs and the case is now ready for decision by this Court.

## IV. *Standard of Review*

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409, 120 S.Ct. 1495. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410–11, 120 S.Ct. 1495.

## V. *Analysis*

Respondent argues that all of Petitioner's claims are barred from habeas review because they are procedurally defaulted and Petitioner has failed to establish cause and prejudice to excuse his procedural default. The doctrine of procedural default provides:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict. *United States v. Frady*, 456 U.S. 152, 167–69, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir.1996). Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust*, 17 F.3d at 162; *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Warner v. United States*,

975 F.2d 1207, 1213–14 (6th Cir.1992), *cert. denied,* 507 U.S. 932, 113 S.Ct. 1314, 122 L.Ed.2d 702 (1993). The last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman,* 501 U.S. at 729–30, 111 S.Ct. 2546. In addition:

> When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar.

*Simpson,* 94 F.3d at 202.

■■■ This Court begins its analysis of whether Petitioner's claims are procedurally defaulted by looking to the last reasoned state court judgment denying Petitioner's claims. *See Coleman,* 501 U.S. at 729–30, 111 S.Ct. 2546. The last state court to address these claims, the Michigan Supreme Court, denied Petitioner leave to appeal because Petitioner "failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." *People v. Koras,* 461 Mich. 968, 609 N.W.2d 189 (Mich.2000). The Sixth Circuit Court of Appeals has held that M.C.R. 6.508(D) is a firmly established and regularly followed state ground precluding subsequent federal habeas review absent a showing of cause and prejudice where the rule was in effect at the time of a petitioner's direct appeal. *Luberda v. Trippett,* 211 F.3d 1004, 1007 (6th Cir.2000), *citing Rogers v. Howes,* 144 F.3d 990 (6th Cir. 1998). M.C.R. 6.508(D) was enacted in October 1989. Petitioner was convicted in 1994. Thus, M.C.R. 6.508(D) was a firmly established and regularly followed state procedural bar at the time of Petitioner's conviction and direct appeal. The Sixth Circuit Court of Appeals has also held that

even a judgment as brief as the one by which the Michigan Supreme Court denied leave to appeal in this case is sufficient to invoke the doctrine of procedural default. *Simpson v. Jones,* 238 F.3d 399, 408 (6th Cir.2000). Accordingly, the state court's judgment clearly rested on a procedural bar and the doctrine of procedural default is invoked.

Therefore, this Court may not review Petitioner's claims unless he has established cause for the default and actual prejudice as a result of the alleged violation of federal law or unless he has demonstrated that failure to consider these claims will result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546.

In the instant case, Petitioner claims that his appellate attorney's ineffectiveness constitutes "cause." The Supreme Court has held that "cause" under the cause and prejudice standard must be "something external to the petitioner, something that cannot fairly be attributable to him." *Coleman,* 501 U.S. at 753, 111 S.Ct. 2546. The Court further held that:

> Attorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error.... Attorney error that constitutes ineffective assistance of counsel is cause, however.

*Id.* at 753–54, 111 S.Ct. 2546 (internal citations omitted).

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This "requires a showing that counsel made errors so serious that coun-

sel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687, 104 S.Ct. 2052. Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

The Supreme Court emphasized that, when considering an ineffective assistance of counsel claim, the reviewing court should afford counsel a great deal of deference:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689, 104 S.Ct. 2052 (internal citations omitted).

The Court further explained that, to establish deficient performance, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. The Sixth Circuit, applying the *Strickland* standard, has held that a reviewing court therefore must focus on whether counsel's alleged errors "have undermined the reliability of and confidence in the result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311 (6th Cir.1996), *cert. denied* 520 U.S. 1257, 117 S.Ct. 2422, 138 L.Ed.2d 185 (1997).

Petitioner claims that his appellate attorney was ineffective for failing to raise the issues raised herein on direct appeal in state court. The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). The Court further stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754, 103 S.Ct. 3308. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry,* 908 F.2d 56, 59 (6th Cir.1990).

"[T]here can be no constitutional deficiency in appellate counsel's failure to raise meritless issues." *Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir.1999). Thus, to determine whether Petitioner received ineffective assistance of appellate counsel, this Court must first examine the merits of Petitioner's underlying claims.

### A. Alleged Ineffective Assistance of Trial Counsel

The Court first considers Petitioner's claim that his trial attorney, David Cripps, was ineffective. Petitioner claims that Mr. Cripps was ineffective in failing to challenge the admissibility of Petitioner's custodial statements to police on the ground that they were taken in violation of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), because police initiated interrogation of Petitioner after he had invoked his right to counsel. Mr. Cripps challenged the admissibility of the custodial statements solely on the ground that they were involuntary, and an evidentiary hearing was conducted by the trial court pursuant to *People v. Walker*, 374 Mich. 331, 132 N.W.2d 87 (1965). If Petitioner did receive ineffective assistance of trial counsel, "the question[ ] then become[s] whether appellate counsel was constitutionally ·ineffective for failing to raise th[is] error[ ] on appeal and, if so, whether the petitioner was prejudiced by counsel's unsatisfactory representation." *Mapes*, 171 F.3d at 413–14 (6th Cir.1999).

■ The Fifth Amendment, which is made applicable to the states by the Fourteenth Amendment, protects an accused from compulsory self-incrimination. In *Miranda v. Arizona*, the Supreme Court held that this prohibition against compelled self-incrimination requires that a custodial interrogation be preceded by advice that the putative defendant has the right to an attorney and the right to remain silent. 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Court further held that if the putative defendant invokes his right to counsel, "the interrogation must cease until an attorney is present." *Id.* at 474, 86 S.Ct. 1602. In *Edwards v. Arizona*, the Supreme Court "reconfirm[ed]" the rule established in *Miranda*, that, when a suspect has invoked the right to have counsel present during custodial interrogation the suspect may not be "subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. at 484–85, 101 S.Ct. 1880; *see also United States v. Dupree*, 323 F.3d 480, 486 (6th Cir.2003). Further, after a suspect has invoked his right to counsel, "a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Id.* at 484.

Petitioner made two statements to police following his arrest. Mr. Cripps filed a motion to suppress these statements on the ground that they were not voluntarily given. He did not raise the issue of a request for counsel in his motion to suppress or in the evidentiary hearing regarding the motion to suppress. The trial court held that the statements had been voluntarily given.

The Court briefly reviews the two custodial statements and the circumstances surrounding those statements. On February 16, 1994, Petitioner was interrogated by Detective Tubbs of the City of Inkster Police Department. After being informed of his rights under *Miranda*, Petitioner gave an oral and then a written statement to Detective Tubbs. Detective Tubbs testified that, in the oral statement, Petitioner stated that, on the morning of the shooting, he happened to meet up with the victim, Dwayne Tindell, at a 7–Eleven. He and Mr. Tindell drove around for a while, drinking beer. At some point, Mr. Tindell decided to drive to Inkster to buy some crack cocaine. Petitioner then gave a written statement setting forth, in substance, the oral statement Detective Tubbs testified he had given. Neither the oral statement nor the written statement ad-

dressed the shooting. Detective Tubbs testified that, as Petitioner was giving his written statement, he stopped, and said that he wanted to get some rest. Petitioner put his head down on the table. Detective Tubbs ceased questioning at that point.

The next day, February 17, 1994, Detective Tubbs initiated another interrogation of Petitioner. Detective Tubbs testified that, prior to questioning Petitioner, he again advised him of his rights under *Miranda*. Petitioner gave a statement in which he admitted to getting angry with Mr. Tindell when Mr. Tindell refused to drive back to a crack house. Petitioner admitted to stabbing Mr. Tindell, but stated that he did not intend to stab him. Petitioner stated that he had only intended to frighten Mr. Tindell.

■ The parties disagree as to what occurred prior to Petitioner's giving his statement to Detective Tubbs on February 16, 1994. At the *Walker* hearing, Detective Tubbs testified that he informed Petitioner of his constitutional rights and Petitioner initialed and signed a constitutional rights form. Detective Tubbs further testified that Petitioner did not request an attorney, but, on February 16, after being read his *Miranda* rights, Petitioner asked Detective Tubbs whether he needed a lawyer. Detective Tubbs testified that he told Petitioner "I don't know, I didn't know what would happen."

Petitioner maintains that he requested, but was denied, counsel prior to giving his statement to Detective Tubbs on February 16. In support of this argument, Petitioner cites the testimony of forensic psychologist, Dr. Firoza B. Van Horn, who testified at the *Walker* hearing regarding the voluntariness of Petitioner's statement to police. She testified that Petitioner told her that, prior to giving a statement to police, he asked for an attorney, a request the police refused. Petitioner also has submitted an affidavit in which he states that, on February 16, 1994, after Detective Tubbs informed him of his *Miranda* rights, he asked for an attorney, but his request was ignored by Detective Tubbs.

This Court conducted an evidentiary hearing on March 21, 2003. Mr. Cripps testified that Petitioner's inculpatory statement to police was a critical and significant part of the prosecution's case. After refreshing his recollection by reviewing the *Walker* hearing transcript, Mr. Cripps testified that he challenged admission of Petitioner's statements to police solely on the ground that they were involuntary. Mr. Cripps admitted that prior to the *Walker* hearing, he knew that Petitioner had told Dr. Van Horn that he had requested an attorney from Detective Tubbs and that the request had been denied. The only justification Mr. Cripps offered for failing to move to suppress Petitioner's statement based upon a violation of *Edwards,* was that he recalled the request for counsel was potentially ambiguous. He stated, "that may be the only thing that caused me to not pursue that issue."

In *Davis,* the Supreme Court held that the cessation of custodial interrogation is required only upon a suspect's unambiguous request for counsel. *Id.* at 459, 101 S.Ct. 1880. Mr. Cripps reasoned that he probably concluded that because Petitioner's statement regarding counsel may have been construed as ambiguous a motion to suppress on that basis was unwarranted. However, Mr. Cripps's analysis fails to account for Petitioner's own statement regarding what occurred. According to Dr. Van Horn's report, Petitioner requested counsel and his request was denied. Further, Mr. Cripps's failure to assert this ground for suppression deprived Petitioner of the opportunity to establish a record in the trial court. In light of the importance of Petitioner's own statements to the pros-

ecution's case, the Court concludes that Mr. Cripps's failure to move to suppress the statements on the basis of an *Edwards* violation fell outside the wide range of reasonably competent assistance of counsel.

■ While suppression of Petitioner's statements may not have resulted in an acquittal, it may have resulted in a finding of guilt on a lesser charge. Petitioner's statements to police were not incidental to the case or merely cumulative. His second statement to police was the only direct evidence bearing upon the intent element of second-degree murder. Mr. Cripps was on notice that his client claimed to have requested but been refused counsel by Detective Tubbs. While the Court affords counsel a great deal of deference in reviewing ineffective assistance of counsel claims, the Court is not required to blindly defer to trial counsel's choices. In reaching its verdict of guilty of second-degree murder, the trial court repeatedly referenced information adduced from Petitioner's statements to Detective Tubbs. The trial court cited Petitioner's "goal-oriented behavior" evidenced by Petitioner's awareness of the knife being in his hand, awareness of the consequences of using the knife, and his desire to return to the drug house to purchase more drugs. Further, in his second statement to Detective Tubbs, Petitioner stated that he was angry with Mr. Tindell. Had that statement not been admitted and considering the testimony that, immediately upon exiting the car, Petitioner informed a bystander that Mr. Tindell needed help, and the lack of any direct evidence of intent, the trial court may have found Petitioner guilty of manslaughter rather than second-degree murder. Thus, the Court's confidence in the result of the trial has been undermined by counsel's failure to move to suppress the statements on the basis of an *Edwards* violation. *See McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir.1996), *cert. denied*

520 U.S. 1257, 117 S.Ct. 2422, 138 L.Ed.2d 185 (1997). Accordingly, the Court determines that trial counsel was ineffective in failing to raise this issue and that Petitioner was prejudiced by this failure.

■ The Court now turns to the question whether Petitioner's appellate counsel was ineffective in failing to present this issue on appeal. The Court recognizes that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Appellate counsel is charged with "winnowing out weaker arguments on appeal and focusing on those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (internal citation omitted). However, affording appellate counsel a great deal of discretion in determining which issues to raise on appeal and which to withhold does not mean that all such decisions made by appellate counsel are beyond reproach. Counsel cannot protect grossly incompetent decisions from examination simply by invoking the Supreme Court's decision in *Jones v. Barnes*. *Jones v. Barnes*, does not absolve appellate counsel of the duty to exercise reasonable professional judgment in presenting claims on direct appellate review. Appellate counsel must familiarize him or herself with the proceedings in the trial court, and, at a minimum, with controlling case law regarding the issues presented by the trial court proceedings. "An appellate advocate may deliver deficient performance and prejudice a defendant by omitting a 'dead-bang winner,' even though counsel may have presented strong but unsuccessful claims on appeal." *U.S. v. Cook*, 45 F.3d 388, 395 (10th Cir.1995) (*quoting Page v. U.S.*, 884 F.2d 300, 302 (7th Cir. 1989)); *see also Manning v. Huffman*, 269 F.3d 720 (6th Cir.2001). *See also Cod-*

*dington v. Langley,* 202 F.Supp.2d 687, 698 (E.D.Mich.2002) ("A 'dead-bang winner' has been defined as 'an issue which was obvious from the trial record.' ") (*quoting United States v. Cook,* 45 F.3d 388, 395 (10th Cir.1995)); *Caver v. Straub,* 2001 WL 1254842 (E.D.Mich. Oct.19, 2001).

The Sixth Circuit Court of Appeals has identified the following factors to be considered in determining whether appellate counsel was constitutionally ineffective in failing to raise certain issues on appeal:

1. Were the omitted issues significant and obvious?

2. Was there arguably contrary authority on the omitted issues?

3. Were the omitted issues clearly stronger than those presented?

4. Were the omitted issues objected to at trial?

5. Were the trial court's rulings subject to deference on appeal?

6. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

7. What was appellate counsel's level of experience and expertise?

8. Did the petitioner and appellate counsel meet and go over possible issues?

9. Is there evidence that counsel reviewed all the facts?

10. Were the omitted issues dealt with in other assignments of error?

11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes,* 171 F.3d at 427–28.

■ The Court concludes that appellate counsel's failure to present this ineffective assistance of counsel claim, considered in light of the factors articulated in *Mapes,* constitutes ineffective assistance of counsel and Petitioner suffered prejudice.

The claim omitted by appellate counsel was significant and should have been obvious. A review of the transcript would have informed appellate counsel that Dr. Van Horn testified that Petitioner maintained that he had requested but been denied counsel. In addition, no contrary authority existed which would have counseled against presenting this important constitutional issue on direct appeal.

The issues presented by Ms. Mueckenheim on direct appeal were important issues, however, they were not stronger than this omitted issue.

Next, appellate counsel's omission of this issue on appeal was not the result of a carefully crafted strategy designed to "winnow[ ] out weaker arguments on appeal and focus[ ] on those more likely to prevail." *Smith,* 477 U.S. at 536, 106 S.Ct. 2661. Instead, the omission resulted from a misunderstanding of Supreme Court authority.

Appellate counsel testified during the evidentiary hearing that she did not present this claim on appeal, because, the statement to police made by Petitioner on February 16 was not incriminating. Ms. Mueckenheim reasoned that, even if Petitioner had requested counsel, he had done so only prior to the February 16 statement. He did not maintain that he again requested counsel prior to the February 17 statement, the only statement which was incriminating. She therefore concluded that suppression on that ground would have resulted in suppression of only the February 16 statement and not the incriminating February 17 statement. This reasoning, however, fails to consider the Supreme Court's decision in *Edwards.* If Petitioner requested counsel on February 16, he was still protected from further police-initiated interrogation on February 17, regardless of whether police again informed him of his rights under *Miranda,*

and regardless of whether he reasserted his desire for counsel. Thus, Ms. Mueckenheim's decision to omit this issue was based upon a misapprehension of controlling Supreme Court precedent.

■ Accordingly, the Court determines that appellate counsel's omission of this issue on appeal, which was based upon a misunderstanding of Supreme Court precedent, fell outside the wide range of professionally competent assistance. In addition, Petitioner was prejudiced by this error because the issue counsel failed to raise presented a constitutional violation warranting relief. Petitioner, therefore, has established cause and prejudice to excuse his procedural default. The Court has further concluded that trial counsel was ineffective in failing to present the alleged *Edwards* violation in his motion to suppress Petitioner's statements to police and that Petitioner was prejudiced by the error. Thus, Petitioner is entitled to habeas corpus relief with respect to this claim.

### B. *Admission of Custodial Statements*

■ Petitioner asserts that he is entitled to habeas corpus relief because the trial court erred in admitting his custodial statements. As discussed above, Petitioner maintains that these statements were taken in violation of *Edwards*. This claim was not presented at trial or on direct appeal due to trial and appellate counsels' ineffectiveness. The Court, however, finds that the state court is in a better position to determine the admissibility of Petitioner's statements on this basis. Therefore, the Court determines that the appropriate relief in this case is to conditionally grant a writ of habeas corpus. Within ninety days, the state court must schedule an evidentiary hearing regarding the alleged *Edwards* violation. If the trial court rules against Petitioner, Petitioner must be provided a right to appeal the trial court's

decision and he must be provided with counsel on that appeal. *See Robinson v. Stegall,* 206 F.Supp.2d 859, 862 (E.D.Mich. 2002) (requiring state court to conduct an evidentiary hearing regarding the petitioner's ineffective assistance of counsel claim and requiring the Michigan Court of Appeals to consider the trial court's denial of motion for new trial following the evidentiary hearing as part of the petitioner's appeal of right). *See also Benoit v. Bock,* 237 F.Supp.2d 804 (E.D.Mich.2003) (ordering the Michigan Court of Appeals to reinstate the petitioner's appeal of right and appoint counsel to represent the petitioner on that appeal). If the court fails to schedule a hearing within ninety days, Petitioner must be unconditionally released.

### C. *Sentencing Claims*

Petitioner also seeks habeas relief based on several alleged errors related to sentencing. Specifically, Petitioner claims that the trial court sentenced Petitioner on inaccurate information regarding the guidelines scores, failed to respond to Petitioner's challenge to inaccurate information in the presentence report, and failed to articulate on the record the reasons for imposition of the sentence. Petitioner alleges that his appellate counsel was ineffective in failing to present these claims on direct review.

■ First, Petitioner argues that he was sentenced based on inaccurate information. He alleges that the trial court erred in scoring him twenty-five points for offense variable three rather than ten points. Petitioner contends that the sentencing guidelines allow for an assessment of ten points for that offense variable when the killing occurred in a combative situation. At sentencing, the trial court concluded that the facts did not support a finding that the killing occurred in a combative situation.

A sentence must be set aside where "the defendant can demonstrate that false information formed part of the basis for the sentence. The defendant must show, first, that the information before the sentencing court was false, and, second, that the court relied on the false information in passing sentence." *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir.1988). Petitioner disagrees with the trial court's finding that the killing did not occur in a combative situation. However, Petitioner has failed to show that this conclusion was based on false information. Therefore, the Court concludes that appellate counsel was not ineffective in declining to raise this claim on appeal.

 Next, Petitioner claims that the trial court failed to respond to his objection at sentencing to inaccurate information in the presentence investigation report. The presentence investigation report stated that Petitioner called Mr. Tindell from a 7–Eleven. Petitioner objected to this statement because, according to Petitioner, he did not contact Mr. Tindell from the 7–Eleven; instead, the two men just happened to be at the 7–Eleven at the same time. Petitioner also objects to the statement in the presentence investigation report that Petitioner has used drugs for the past four years. Petitioner argued to the trial court judge that, prior to the stabbing incident, he had been drug free for two-and-a-half years. Petitioner argues that the trial court failed to rule on his objections to the presentence investigation report in violation of Michigan Court Rule 6.425(D)(3). The Court need not determine whether this claim is procedurally defaulted because it fails to state a claim upon which habeas relief may be granted. " '[F]ederal habeas corpus relief does not lie for errors of state law.' " *Estelle*, 502 U.S. at 67, 112 S.Ct. 475 (1991) (*quoting Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)). The petitioner's argument is based solely on an alleged violation of state law. Consequently, this claim is not cognizable on federal habeas corpus review. *See, e.g., Thomas v. Foltz*, 654 F.Supp. 105, 106–07 (E.D.Mich.1987) (holding that where petitioner seeks relief on the basis of a trial court's application of state sentencing guidelines, petitioner's claim is not cognizable on habeas review); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (holding that "federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures").

Finally, Petitioner contends that he is entitled to habeas corpus relief because the trial court failed to articulate on the record the reasons for the sentence imposed, and that his appellate attorney was ineffective in failing to present this claim on direct review. The Court has reviewed the sentencing transcript and notes that the trial court did provide justification, albeit brief, for the sentence imposed. The trial judge stated that second-degree murder had been proven beyond a reasonable doubt, and that, contrary to defense counsel's arguments, no extenuating circumstances, such as a combative situation had been established. The judge found that the victim had done nothing to victimize Petitioner and that Petitioner was not reasonably in fear for his life. Further, the judge found that Petitioner was aware of what he was doing and, in committing this crime, was focused exclusively on satisfying his own desire for more drugs. Thus, because the trial court judge provided justification for the sentence imposed, this claim is meritless and appellate counsel was not ineffective for failing to present it on direct review.

### D. *Involuntary Manslaughter*

 Finally, Petitioner claims that habeas relief is also warranted because the

trial court erred in failing to consider the requested lesser offense of involuntary manslaughter. Again, Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his failure to present this claim on direct review.

In his closing statement, trial counsel repeatedly argued that the trial judge should consider a finding of not guilty or a finding of involuntary manslaughter. Petitioner argues that the trial court deprived him of his right to due process because the court did not consider involuntary manslaughter in deciding its verdict.

Under Michigan law, involuntary manslaughter is the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty. *People v. Clark*, 453 Mich. 572, 578, 556 N.W.2d 820 (1996). The trial court judge, in rendering her verdict, did not specifically articulate a holding with respect to involuntary manslaughter. However, she did find that Petitioner acted with knowledge of the risk of death accompanying use of a knife. She held that Petitioner acted with one of the following states of mind: with the intent to kill, with the intent to do great bodily harm, or with the intent to create a very high risk of death. Therefore, although the trial judge did not make a specific finding as to involuntary manslaughter, the facts as she determined them did not support a finding of involuntary manslaughter under Michigan law.

■ Therefore, the Court finds that appellate counsel was not ineffective for failing to present this claim on direct appeal. His claim is therefore barred unless he can establish that a constitutional error resulted in a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. *Schlup*, 513 U.S. at 321, 115 S.Ct. 851. Thus, Petitioner must assert a constitutional error along with a claim of innocence. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.*

Petitioner has not supported his allegation of constitutional error with new reliable evidence that was not presented to the trial court. Accordingly, Petitioner's claim is procedurally barred.

## VI. *Conclusion*

For the foregoing reasons, **IT IS ORDERED** that a writ of habeas corpus is **CONDITIONALLY GRANTED**. The state court must, within ninety days, schedule an evidentiary hearing regarding the alleged *Edwards* violation. Unless a date for an evidentiary hearing is scheduled within ninety days, Petitioner Koras must be unconditionally released. If the state court rules against Petitioner following the evidentiary hearing, then Petitioner must be provided a right to appeal and counsel on that appeal.